IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 22, 2009 Session

## RICHARD T.D. BETHEA, ET AL. v. SONG HEE HONG, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-06-2287      Arnold B. Goldin, Chancellor**

_____

**No. W2008-02553-COA-R3-CV - Filed May 29, 2009**

_____

This appeal involves a dispute arising out of a contract for the sale of Appellant's house. After the contract was executed, Appellees conducted a home inspection which revealed mold in the home's air ducts. Appellants refused to repair the air ducts, and Appellees terminated the agreement. Both parties filed motions for summary judgment. The trial court granted summary judgment in favor of Appellees finding that termination was an available remedy under the terms of the agreement. Finding no error in this conclusion, we affirm the judgment of the trial court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S. and DAVID R. FARMER, J., joined.

Gregory D. Cotton, Memphis, TN, for Appellants

Song Hee Hong, Collierville, TN, _pro se_

**OPINION**

**Background**

Appellants Richard T.D. Bethea and Phyllis B. Bethea ("Sellers") are a married couple who owned a home in Shelby County, Tennessee. Appellees Song Hee Hong and Sung Hee Hong Tak ("Buyers") are also a married couple who expressed an interest in purchasing Sellers' home. On July 12, 2006, the parties entered into a "Purchase and Sale Agreement" in which Buyers agreed to purchase the property for the price of $370,000. The agreement was based on a standard form prepared by Buyers' representative, Cyre-Leike Realtors.[1]

_____

[1] Sellers were not represented by a real estate agent.

As provided in the agreement, Buyers hired Bradford Sterling to inspect the property and prepare an inspection report. His report contained several recommendations for repair work and specifically noted that:

> A musty odor was detected inside the house during the inspection. This condition can indicate an issue with the air ducts. Mold and mildew was observed on several of the air registers within the home. Suggest further review by a qualified contractor as a health/safety precaution.

Buyers received this report on July 18, 2006. The next day, Buyers forwarded the report, along with a list of required repairs to Sellers. Specifically, Buyers asked Sellers to "clean air ducts to remove musty odor inside house and replace air registers with molds and mildews." Sellers responded on July 21, 2006. They agreed to most of Buyers' repair requests but refused to clean the air ducts. Sellers attached a service report indicating that such cleaning would be impossible. On July 22, 2006, Buyers notified Sellers that the agreement was terminated and asked that all earnest money be refunded. The next day, Sellers sent Buyers a letter stating that termination was impermissible and that Buyers were in default of the agreement.

Sellers filed a complaint for breach of contract in Shelby County Chancery Court on November 22, 2006. Buyers filed an answer, and the parties then conducted limited discovery. Agreeing that there were no issues of disputed fact, both parties filed motions for summary judgment. At issue was the meaning of two provisions in the agreement: Paragraph 20 and Paragraph 8.D. Paragraph 20 was inserted as an amendment to the standard form at Buyers' request in order to alleviate their concerns about mold. It provides:

> Paragraph 20 Special Stipulations: The following Special Stipulations, if conflicting with any preceding paragraph, shall control:
>
> This contract is contingent upon a satisfactory mold inspection to be done at time of home inspection. If any mold is found, purchaser has 2 days from receipt of the home inspection to notify seller that purchaser terminates the contract and all earnest money will be refunded. Purchaser non response by the 2 days period shall be deemed acceptance of the property as is this condition.

Paragraph 8.D. sets out the procedure for handling repair requests:

> Paragraph 8.D. Buyer's Inspection Period and Resolution:
> Within 10 days after Binding Agreement Date, any inspections described herein shall be made AND, by written notice to Seller, Buyer shall either:
> (1) accept the Property in its present "AS IS" condition with any and all faults and no warranties expressed or implied. Seller has no obligation to make repairs;

OR (2) furnish Seller a copy of any and all inspection reports and a written list of items set forth in the inspection report(s) which Buyer requires to be repaired and/or replaced in a professional and workmanlike manner.

\*　　　\*　　　\*

Seller shall, by written notice within 2 days after receipt of notice of repair requirements accept the repair proposal if the cost is within the limit stated in paragraph ten (10). If the cost exceeds the limit, Seller shall submit to Buyer a counter repair proposal. Seller's failure to timely respond shall be deemed acceptance of Buyer's repair proposal.

Buyer shall, within 2 days after receipt of Seller's repair proposal, either

(1) accept Seller's counter repair proposal;
OR (2) make a counter repair proposal to Seller;
OR (3) terminate this Agreement with all Earnest Money refunded to Buyer.

Buyers argued that termination was proper under Paragraph 8.D. Sellers argued that Paragraph 20 provided Buyers' exclusive remedy for resolving problems with mold.

The trial court then conducted a hearing on the parties' competing motions for summary judgment. On September 9, 2008, the trial court entered an order granting summary judgment in favor of Buyers. This order stated the grounds for the court's legal conclusion and included specific findings:

4. This Court is of the opinion that the case falls under the inspection paragraph 8 of the contract after reviewing the documents that have been provided to the Court.
5. That the inspection done by the Defendants' was received from Home Inspection Services on July 18, 2006 and was provided to Plaintiffs/Sellers on the 19th of July, 2006.
6. That the Plaintiffs/Sellers went through the document, home inspection report, and prepared responses thereto, the first of which was 1.B: clear air ducts to remove musty odor out of the inside of the house, and replace registers with molds and mildews.
7. That this provision was a very significant factor to the Defendant/Buyer.
8. That the response that was received from Plaintiffs/Sellers included information from HVAC service man regarding the duct cleaning and that Plaintiffs/Sellers agreed to replace or clean registers at the front door entry of the home which is the subject of the contract for sale in this cause.
9. That there is no doubt that the HVAC inspection reflected that the OWL FLEX duct work was uncleanable and further that the fact that the duct work was uncleanable does not satisfy the Defendants/Buyers request that it be cleaned.

10. That the Defendants/Buyers had a particular interest in the cleaning of the duct work and that the Defendants/Buyers received a response back on the 21st of July, 2006.

11. That the Defendants/Buyers responded within two days of receipt of the response of the Plaintiffs/Sellers on the 22nd day of July, 2006 and exercised the choice set out in paragraph 8 of the contract for sale which states in effect that the Defendants/Buyers can accept the counter-proposal of the Plaintiff/Sellers or make a counter to their proposal or terminate the agreement with all earnest money to be refunded to Defendants/Buyers in this cause.

12. That the Defendants/Buyers responded by terminating the contract for sale and demanding the return of their earnest money.

13. That this Court finds that the termination by Defendants/Buyers was in a timely manner and that they are entitled to the return of their earnest money....

The court entered a judgment in favor of Buyers representing the amount of the earnest money and prejudgment interest. The trial court, however, did not award Buyers' attorney's fees because they appeared *pro se*.

Both parties filed motions to alter or amend the judgment under Tenn. R. Civ. P. 59.04. In their motion, Buyers asserted that they had been represented by counsel during a portion of the proceedings and attached the affidavit of their attorney, William Jeter. The trial court agreed and found that Buyers were entitled to attorney's fees under the terms of the agreement. The judgment was then amended to include attorney's fees in the amount of $1,907.50. Plaintiffs then filed a timely notice of appeal.

On appeal, Sellers raise three issues, as stated in their brief, for review:

1. Did the trial court err as a matter of law by failing to interpret the purchase and sale agreement under paragraph 20 which would not have allowed [Buyers] to terminate the contract?

2. Did the trial court err as a matter of law by interpreting the purchase and sale agreement to allow [Buyers] to terminate the contract based upon paragraph 8.D?

3. Did the trial court err in awarding the defendants attorney fees?

**Standard of Review**

On appeal, the review of a trial court's grant of a summary judgment presents a question of law. Because summary judgment involves questions of law only, our review is de novo with no presumption of correctness afforded to the trial court's determination. *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 337 (Tenn. 2005); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04; *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005). When the material facts regarding a

controlling issue are undisputed, summary judgment is an appropriate means of deciding that issue. ***Byrd v. Hall***, 847 S.W.2d 208, 214-215 (Tenn. 1993).

### Analysis

In the present case, the facts are undisputed. The only issue involves the trial court's interpretation of the Agreement. In resolving a dispute involving the meaning of a contract, "our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999). If the terms of the contract are unambiguous, the determination of the parties' intent is a question of law for the court. ***Warren v. Metro. Gov't of Nashville and Davidson County***, 955 S.W.2d 618, 623 (Tenn. Ct. App. 1997). Provisions in a contract "should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." ***City of Cookeville v. Humphrey***, 126 S.W.3d 897, 904 (Tenn. 2004) (quoting ***Guiliano***, 995 S.W.2d at 95). In doing so, courts should read the contract in its entirety to determine if one provision modifies, limits, or explains another provision. ***Associated Press v. WGNS, Inc.***, 348 S.W.2d 507, 512 (Tenn. Ct. App. 1961).

Sellers argue that Paragraph 20 limits Buyers ability to request repairs under Paragraph 8.D. If mold is found during the home inspection, Sellers assert that Buyers only remedy is to terminate the contract within two days as provided in Paragraph 20. We disagree. Reading the provisions together, it appears that Buyers could look to either provision as a remedy in the event mold is discovered. Buyers could either cancel the agreement immediately under Paragraph 20 or ask the Sellers to perform repairs under Paragraph 8. The trial court specifically found that Buyers were very concerned about mold in the home. Accordingly, we do not read the agreement to limit Buyers' remedies with respect to mold. To do so would ignore the clear intentions of the parties. Furthermore, by pursuing a remedy under Paragraph 8, Buyers actually gave Sellers an opportunity to fix the problem. Accordingly, we agree with the trial court's finding that Paragraph 8.D controlled the dispute.

Sellers also argue that Buyers could not cancel the agreement under Paragraph 8 because their initial repair proposal was improper. Specifically, Sellers argue that Buyers could not cancel the agreement because of Sellers' inability to clean the air ducts. The agreement, however, specifically allows Buyers to inspect the heating and air conditioning systems for, among other things, mold. After the inspection, the agreement allows Buyer to provide "a written list of items set forth in the inspection report(s) which Buyer requires to be repaired and/or replaced." Here, Buyer's repair proposal included a request that Sellers clean the air ducts because of a problem indicated in the inspection report. The agreement's only limit on Buyers' right to request repairs is contained in Paragraph 8.A., which provides:

> Buyer waives any objections to matters of purely cosmetic nature disclosed by inspection. Buyer has no right to require repairs or alterations purely to meet current building codes, unless required to do so by governmental authorities.

Here, Buyers' request for repairs was based, in part, on cosmetic concerns (i.e., the "musty odor"). The primary basis for the request, however, was Buyers' broader health concern about mold in the house. Buyer's request that Sellers clean the air ducts was therefore permissible under the agreement.

When Sellers received Buyers' requests, they had two options under the agreement: accept the repair proposal or submit a counter repair proposal. Sellers opted for the latter. After receiving Sellers' counter proposal, Buyers then had three options, one of which was to terminate the agreement. Because their initial repair proposal was properly made, Buyers were within their rights to terminate the agreement under Paragraph 8.D. Therefore, we affirm the trial court's finding that Buyer's properly terminated the agreement and were entitled to the return of the earnest money.

Sellers also argue that the trial court erred in awarding the attorney's fees of Buyers. Under the terms of the contract, if either party files suit for breach, "the prevailing party shall be entitled to recover all costs of such enforcement, including reasonable attorney's fees." On appeal, Sellers assert that Buyers are not entitled to attorney's fees as provided in the agreement because Buyers failed to make a claim to recover those fees. Sellers argue that Tenn. R. Civ. P. 13.01 required Sellers to assert a claim for attorney's fees in their pleadings. Sellers, however, failed to raise an objection on this issue in the trial court. Accordingly, the issue is waived. See ***Black v. Blount***, 938 S.W.2d 394, 403 (Tenn. 1996) ("Under Tennessee law, issues raised for the first time on appeal are waived."). The trial court's order awarding attorney's fees is therefore affirmed.

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to Appellants, Richard T.D. Bethea and Phyllis B. Bethea.

_____
**J. STEVEN STAFFORD**, J.